717 So.2d 93 (1998)
Dwight MORROW, Appellant,
v.
STATE of Florida, Appellee.
No. 97-1189.
District Court of Appeal of Florida, First District.
August 13, 1998.
Rehearing Denied September 15, 1998.
James T. Miller, Jacksonville, for Appellant.
Robert A. Butterworth, Attorney General; Stephen R. White and Randy L. Havlicak, Assistant Attorneys General, Tallahassee, for Appellee.
PER CURIAM.
Appellant, Dwight Morrow, appeals his conviction and sentence for sexual battery upon a person less than 12 years of age. Appellant contends that the trial court improperly admitted Williams Rule[1] evidence and that the trial court abused its discretion when it refused to modify a jury instruction. Finding reversible error on the first issue, we reverse the conviction.
Appellant was charged by a five-count information with four counts of lewd and lascivious conduct (fondling) and one count of sexual battery upon a person less than 12 years of age. The four counts of lewd and lascivious conduct were unrelated to the sexual battery charge. The sexual battery count was severed for trial. The State sought to introduce evidence of other crimes, wrongs or acts, specifically showing that appellant handled, fondled, or made an assault in a lewd, lascivious, or indecent manner upon H.K., M.M., C.H., and M.R., all girls under the age of 16 years of age, by touching their vaginal areas. The trial court held an evidentiary hearing on the admissibility of the collateral crimes evidence. The court heard the proffered testimony of H.K., M.M., C.H., M.R., and A.S., the victim of the sexual battery offense. The court found sufficient similarities between the alleged collateral crimes and the charged offense and held that the testimony of H.K., M.M., C.H., and M.R. would be admissible as evidence of a common scheme and to corroborate the testimony of A.S.
At trial, the State presented the testimony of A.S., who testified to events which allegedly occurred twelve or thirteen years before the trial. She testified that appellant was married to her godmother and she frequently stayed at their house. She recalled the last *94 night she slept there because she woke up scared due to thunder and lightning and went into appellant's bedroom (where he was sleeping with his wife). A.S. claims that appellant told her to climb up onto the bed and that she could sleep "in the middle." She complied and then remembered waking up to appellant digitally penetrating her vagina.
The State then presented the Williams rule evidence. The first two witnesses testified regarding their childhood encounters with appellant. H.K. testified to events approximately sixteen years before the trial, during visits she made to appellant's home when they were neighbors: she testified that appellant fondled her on numerous occasions. M.M. testified to an event that occurred four years before the trial when she was at a sandwich shop with her father and appellant asked her if she wanted to see some "police stuff" in his police van. M.M. claimed that while she was in his van, appellant lifted her skirt and started feeling on her vagina with his hand, under her panties. The State also called M.R. and C.H. who had encounters with appellant approximately two years before the trial. They both testified that they went to appellant's house to see his "Snow Village Collection" and while they visited him, he touched them indecently with his hand.
Appellant argues that the trial court erred in admitting the collateral crime evidence because, although the collateral crimes were somewhat similar to each other, they were not sufficiently similar to the charged offense to be admissible. The State contends that the evidence was admissible to show common scheme and to corroborate A.S.'s testimony, and that any factual differences between the charged offense and collateral crimes is not dispositive. The State further argues that appellant's objection to the admissibility of testimony was only preserved as to H.K. and M.M. because he failed to object at trial when M.R. and C.H. testified. We agree that appellant waived his objection to the admissibility of M.R. and C.H.'s testimony. See Lindsey v. State, 636 So.2d 1327, 1328 (Fla.1994)(stating that the contemporaneous objection rule applies to evidence of other crimes and even if a prior motion in limine has been denied, the failure to object at the time collateral crime evidence is introduced waives the issue for appellate review)(citing Lawrence v. State, 614 So.2d 1092, 1094 (Fla.1993)); Feller v. State, 637 So.2d 911, 916 (Fla.1994) ("when the child's collateral crime testimony was introduced during trial, defense counsel raised no objection and thus did not preserve the issue for appellate review"); Hardwick v. Dugger, 648 So.2d 100, 107 n. 5 (Fla.1994); Correll v. State, 523 So.2d 562, 566 (Fla.1988). Therefore, we only address the issue of whether the trial court improperly admitted the testimony of H.K. and M.M.
Evidence of other crimes or acts is admissible if it is found to be relevant for any purpose, save that of showing bad character or propensity. See Williams; § 90.404, Fla. Stat. (1997). Section 90.404, which codified the holding in Williams, provides that similar fact evidence of other crimes, wrongs, or acts may be admitted when relevant to prove a material fact in issue such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In limited circumstances, the testimony of a child victim may be corroborated through evidence of a collateral offense. See Heuring v. State, 513 So.2d 122 (Fla.1987)(providing for such corroboration in cases where the offenses occur in a familial context); State v. Rawls, 649 So.2d 1350 (Fla.1994)(extending the principle announced in Heuring to collateral offenses committed outside the familial context). Although the victim of the charged offense herein, A.S., was arguably in a familial relationship with appellant, the same cannot be said of the victims of the collateral offenses. The parties concede that the admissibility test in this case is measured by the stricter standard for non-familial settings where the collateral offense(s) must bear a higher degree of similarity to the charged offense. See Rawls, 649 So.2d at 1353; cf. Saffor v. State, 660 So.2d 668 (Fla.1995)(recognizing the relaxed standard of admissibility of the collateral sex crime evidence for familial sexual battery cases); Barton v. State, 704 So.2d 569 (Fla. 1st DCA 1997)(stating that in a familial setting, *95 the familial relationship itself may be one of the points of similarity between the charged and collateral offenses).
Although the trial court found sufficient similarities, the record reflects more differences than similarities. Applying the principles set forth in Rawls, we conclude that the collateral crimes evidence was improperly admitted because the nature of the offenses and circumstances surrounding their commission did not share the "unique combination of characteristics required to meet the strict standards of the Williams rule." Rawls, 649 So.2d at 1354; see also Saffor, 660 So.2d at 672 (recognizing the "strict similarity in the nature of the offenses and the circumstances surrounding their commission" in cases occurring outside the familial context). The testimony established that appellant did not gain access to all of his victims in the same manner. H.K. and M.M. both testified that appellant fondled their vaginal areas with his hand while they were visiting him after he "lured" them in, one to his home and another to his police van. Although the sexual misconduct with A.S. occurred in appellant's home, she was not "lured" in. She was an overnight guest in his marital home, as she had been many times before, because she liked to "spend the night" and she considered appellant and his wife, her godmother, part of her family. The only reason she was in appellant's bed was that she woke up in the middle of the night, scared by the lightning and thunder, and sought refuge in appellant's and her godmother's bedroom. The testimony also established that only the collateral offenses occurred when no one else was present. The charged offense allegedly occurred while appellant's wife was asleep right next to them. We cannot say that the charged offense and the collateral offenses were sufficiently similar to meet the test of admissibility in this non-familial case. The collateral offenses prove "no more than appellant's propensity to commit offenses of the same general type, an issue expressly prohibited by section 90.404(2), Florida Statutes." See Barton v. State, 704 So.2d at 575.
Because we conclude we must reverse on the basis of the Williams rule error, we do not reach the second issue raised by appellant. Accordingly, we reverse appellant's conviction and sentence and remand for a new trial.
REVERSED and REMANDED with directions.
ALLEN, WOLF and DAVIS, JJ., concur.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.1959).